Error.

JAMES T. GOOCH, Adm'r, v. W. W. PEEBLES et al.

*Attorney and Client—Conflict—Will—Trustee.*

1. An attorney cannot terminate his relation with his client, at pleasure and without notice, so long as anything remains to be done about the matter in which he is employed.

2. So, where P. was the attorney of an executrix, and trustee under a will (she having also an interest in the property devised), who was afterwards removed and another administrator *d. b. n. c. t. a.*, having adverse interest, was appointed in his place, and P. became his attorney in the settlement of the estate: *Held*, that P.'s relations were so conflicting and antagonistic that the law would not sanction his action, and this, though no compensation was actually paid him.

3. And where, in proceedings by such administrator to sell certain lands of his testator for assets, the attorney P., who, having purchased an interest of the testator's husband in the lands, was co-defendant with his client, the executrix, obtained a decree of Court without her knowledge, whereby he became entitled to the surplus proceeds of such sale: *Held*, he could acquire thereby no interest adverse to hers, and the decree should be vacated so far as it affected or declared his interest.

4. The conflict of his *duty* as attorney for the administrator, charged with protecting the interests of the executrix and her *cestui que trustant* under the will, with his interest, as one of the defend-ants, asserting a claim against the estate, cannot be permitted in a Court of justice.

5. Discussion by DAVIS, J., of the duties and responsibilities of attorneys in their relations to their clients.

This was a CIVIL ACTION, tried at the Spring Term, 1889, of NORTHAMPTON Superior Court, before *MacRae, J.*

The complaint alleges in substance—

1. That in 1873 Virginia A. Johnson died in Northampton County leaving a last will and testament, which was duly proved on the 3d day of March, 1873, and that Chatharine T. Johnson, the executrix therein named, qualified as such.

2. That on the first day of April, 1876, said executrix was, by a decree of Court, removed, and J. J. Long, the intestate of the plaintiff Gooch, was appointed administrator *d. b. n. c. t. a.*

3. That in September, 1876, said Long, administrator, &c., instituted a proceeding to sell the real estate belonging to the testatrix, known as " Diamond Grove," to make assets to pay debts. In said proceeding, Catherine T. Johnson, Mary L. Johnson, C. W. Johnson, P. M. Johnson, Jennie V. Johnson, James Johnson, Mrs. M. B. Cook, C. A. Johnson, S. B. McMillan, W. W. Peebles and R. B. Peebles were defend-ants.

4. That, by decree made in said special proceeding, said land was sold, and thereafter the sale was confirmed, and a distribution of the proceeds directed. (A copy of the special proceedings is filed as a part of the complaint.)

" 5. That W. W. Peebles, one of the defendants in the action was a defendant in said special proceeding, at the same time acting as attorney for the plaintiff J. J. Long; was surety on the prosecution of said Long as administra-

tor, and, as such attorney, he drew the petition for sale of said land, the decree directing the sale thereof, the order directing the distribution of the funds, the order confirming the sale, and order of publication; he acted throughout said proceeding as attorney for plaintiffs and attorney for defendants.

"6. That C. T. Johnson, the executrix above named, one of the plaintiffs in this action, and one of the defendants in the special proceeding above mentioned, employed said W. W. Peebles as her attorney, while she acted as such executrix; and reposing the utmost confidence in his integrity and disposition to deal fairly by her and the other distributees and legatees under the will of the said Virginia A. Johnson, employed and relied upon said W. W. Peebles to manage and protect the interest of herself and the other legatees and distributees under the will of the said Virginia A. Johnson during the administration of said J. J. Long; that she and the other legatees and distributees under said will filed no answer in said special proceeding, because never informed by said W. W. Peebles it was necessary so to do to protect their interests; that she never saw said petition, and believed, till within a short time prior to the beginning of this action, that the scope of said petition only extended to the sale of said land merely to make assets to pay the debts of Virginia A. Johnson; that she did not employ said W. W. Peebles as her attorney in person, but her brother, the late James Johnson, the husband of the said Virginia Johnson, who attended to all matters of business for her, retained the said W. W. Peebles for her, to attend to all their interests in said estate.

"7. That since the beginning of this action, she, and the other legatees and distributees under said will, heard for the first time of the claim of the defendants W. W. Peebles and R. B. Peebles to the surplus from the sale of said land remaining after the payment of the debts of Virginia A.

Johnson; that had the legatees and distributees under said will been apprised of any such claim, they would have resisted the same; they are informed that said claim is based upon a sale under executions issuing on judgments in favor of sundry parties against one James Johnson, husband of the said Virginia A. Johnson.

" 8. These plaintiffs are informed and believe, and so charge, that the said James Johnson took nothing under the will of the said Virginia A., and that the sale under which the plaintiffs claim was null and void.

" That J. T. Long died in the county of Halifax, North Carolina, on the ____ day of April, 1877, and that the plaintiff James T. Gooch was soon thereafter appointed administrator *de bonis non* with the will annexed of Virginia A. Johnson, was qualified and entered upon the discharge of his duties as such, and is still administrator; that on the 14th day of December, 1877, the said James T. Gooch was appointed administrator *de bonis non* of J. J. Long; was qualified as such, entered upon the discharge of his duties, and is now such administrator; that both of said appointments were made by the proper Court, and according to law.

" 10. These plaintiffs are informed, believe, and so charge, that the said decree directing the payment of the surplus of the proceeds arising from the sale of said land to the defendants W. W. Peebles and R. B. Peebles was without warrant of law, is null and void, and is a fraud upon the rights of the plaintiffs.

" Wherefore, the plaintiffs demand judgment, that so much of said decree as directs the payment of the surplus of the proceeds of said land, after the payment of the debts of Virginia A. Johnson, to the defendants W. W. Peebles and R. B. Peebles, be amended, cancelled and declared void."

The answer of W. W. Peebles, so far as material to be considered, denies so much of the fifth allegation of the com-

plaint as alleges that "he acted throughout said proceeding as attorney for defendants." That in the special proceeding for the sale of the land he acted as attorney for the petitioner therein. He denies that he acted as "attorney for the defendants, or either of them, or that he ever promised to act as such, or that he was ever employed or sought to be employed as such."

In answer to the sixth section of the complaint, he admits that he acted as attorney for C. T. Johnson, as executrix of V. A. Johnson, from the time of her qualification as executrix till her letters testamentary were cancelled and she was removed as executrix * * * and during all of that time he served her faithfully, to the best of his ability, but he denies that he was employed as attorney or acted as attorney for her, or either of the defendants, in said special proceeding, after she was removed as executrix, * * * and after and during the administration of said J. J. Long. According to his best recollection and belief, Dr. James Johnson, the brother of the testatrix, employed him to act as attorney for said testatrix, as herein stated.

The seventh, eighth and tenth allegations are also denied.

He also says that the Court has no jurisdiction of the subject-matter of the action, and "that this action was not commenced within the time limited by law, because it was not commenced within three years from the time the cause of action accrued." R. B. Peebles adopted the answer of his co-defendant, W. W. Peebles.

By the will of Virginia A. Johnson the whole of her estate is devised and bequeathed to Catherine E. Johnson, her sister-in-law, " in trust to hold and preserve the same from all liability to the debts of my husband, James Johnson, which were contracted by him prior to our intermarriage.

"Secondly. To hold the same, subject to the foregoing provisions, for the use and benefit of my husband, the said James Johnson, during the term of his natural life, and at

his death to dispose of and convey the same in such manner and to such persons and purposes as the said James Johnson may, by his last will and testament, direct.

"Thirdly. In case any person or persons should take proceedings to subject any portion of my estate, held in trust as aforesaid, to the debts of the said James Johnson, which were contracted prior to my marriage with him, then, and in that case, all interest, whether as *cestui que trust*, or otherwise, of the said James Johnson in my said estate shall instantly cease and determine, and the said Catherine Johnson shall thereafter hold the same, divested and discharged of the aforesaid trust, and upon the following trusts, namely: In trust for her own use, and further use of such of the daughters of my said husband, James Johnson, as may then never have been married, as long as they remain single; as each may marry her interest shall cease, and when all are married, then in trust for her own use and the use of the married daughters of the said James Johnson, share and share alike; on the death of the said Catherine Johnson her interest shall cease, and shall go over into the common fund for the benefit of the other *cestui que trust*.

"Fourthly. Subject to the foregoing provision, I declare that Catherine Johnson shall have power to sell any portion of my real estate and make title to the purchaser, on receipt of the purchase-money, and the like as to my personal estate, and shall re-invest the proceeds, to be held upon the same trusts as the original estate.

"Fifthly. In case my husband, James Johnson, shall die without having executed any last will and testament, I declare that my said estate shall be held by Catherine Johnson upon the trust declared in the third clause of this my will.

"Sixthly. In case the said James Johnson shall fully pay, or discharge by any means, all and every part of the debts contracted by him prior to my marriage with him, then,

and in that case, I declare that he shall take and receive all my aforesaid estate, free and discharged from all the trusts in the premises declared, and shall hold the same absolutely for his own sole use and benefit."

Catherine T. Johnson is named sole executrix and quali- fied as such, and employed the defendant W. W. Peebles, who was then a practicing attorney in Northampton County, as her counsel.

From the special proceeding, referred to in the complaint, a copy of which is sent up with the record, it appears that the defendants therein, other than W. W. Peebles and R. B. Peebles, were non-residents, and in the notice to make them parties by publication it is stated that the "object of the action is for the sale of certain real estate (describing it) for the payment of the debts of the deceased, V. A. Johnson, and that no personal claim is made against them. This notice is signed, "W. W. Peebles, Plaintiff's Attorney."

The sale under that proceeding was made December 4th, 1876, and reported the same day, and on the 24th of Decem- ber, 1876, there was an order that "the defendants take notice that unless objection is made within ten days from the service of this notice," the report of sale, &c., will be confirmed. There is an endorsement as follows: "Service accepted December 24th, 1876. W. W. Peebles, R. B. Peebles." This notice does not appear to have been served upon the other defendants (plaintiffs in this action) by pub- lication or otherwise.

There is an order (without date) confirming the sale, and directing J. J. Long, administrator, &c., to pay therefrom the debts and charges of administration, "and that the sur- plus, if any, he shall pay to the defendants W. W. Peebles and R. B. Peebles."

James Johnson died in 1876, without having made any will, and the plaintiffs Camilla and Lula were his only unmarried daughters at the time of his death.

The property of Mrs. Johnson consisted mainly of the plantation on which she resided at the time of her death, known as the "Diamond Grove."

Previous to the death of the said James Johnson, executions issued against him and were levied upon his interests in the said "Diamond Grove" plantation, and a few days after his death a sale was had under said executions, at the court-house door in Jackson, on the 6th of April, 1876, when and where the defendants W. W. Peebles and R. B. Peebles became the purchasers, in the sum of ten or fifteen dollars.

A proceeding had been instituted before the Clerk of Northampton Superior Court to remove the said Catherine Johnson as executrix, and on the 23d day of March, 1876, she was removed by the Clerk, and J. J. Long, the plaintiff Gooch's intestate, qualified in her stead as administrator *de bonis ncn cum testamento annexo* of Virginia A. Johnson, on April 1, 1876. Said proceeding before the Clerk was at the instance of the said J. J. Long, who was a creditor of Virginia Johnson, whose attorney in the matter was the defendant R. B. Peebles, and the said Catherine was represented by her counsel, the defendant W. W. Peebles.

On September 12th, 1876, a special proceeding was instituted before the Clerk to sell "Diamond Grove" to make assets to pay the debts of Virginia Johnson. In said proceeding, the said J. J. Long, as administrator *de bonis non cum testamento annexo* of Virginia Johnson, is plaintiff, and Catherine T. Johnson, Camilla Johnson, Lula Johnson (called May L.), the above plaintiffs; C. W. Johnson, P. M. Johnson, Jennie V. Davidson, Mrs N. B. Cook, Susan B. McMillan, and the said W. W. Peebles and R. B. Peebles are defendants. The said W. W. Peebles appears as attorney for the plaintiff Long, and all the papers drawn in said proceeding are in his hand-writing. The Clerk ordered the sale of the land, appointing the plaintiff J. J. Long a commissioner to sell the same; sale was made and confirmed, and

in the final decree it is adjudged that all the surplus arising from the sale, after paying the debts of Virginia Johnson, should belong to the defendants W. W. Peebles and R. B. Peebles. The said J. J. Long is dead, and the plaintiff Gooch is his administrator, and also administrator *d. b. n. c. t. a* of Virginia Johnson.

The purpose of this action is to declare fraudulent, and to set aside so much of said final decree as adjudges that the surplus arising from the sale of "Diamond Grove," after paying the debts of Virginia Johnson, should belong to the defendants W. W. Peebles and R. B. Peebles.

When the case was called for trial, plaintiffs moved for judgment on the pleadings on the ground that the pleadings themselves disclosed a state of facts that renders that part of the said final decree fraudulent and void.

This motion was denied by his Honor, and the plaintiffs excepted.

The following two issues were agreed on to be submitted to the jury:

"1. Is that part of the decree declaring the defendants entitled to the surplus, after paying the debts of Virginia Johnson, fraudulent?"

"2. Is the action barred by the statute of limitations?"

The plaintiffs introduced the following evidence:

1. The record of the special proceeding to sell "Diamond Grove" to make assets, all the papers in which are admitted to be in the hand-writing of W. W. Peebles.

2. The record of a suit now pending in the Superior Court of Northampton County, in which the said J. T. Gooch, as administrator of J. J. Long, is plaintiff, and W. W. Peebles is defendant, to recover the funds in his hands belonging to the estate of his intestate, who was a creditor of Virginia Johnson, arising from the sale of "Diamond Grove." In this action an account was stated, by an order in the cause,

in which the defendant W. W. Peebles admitted a balance in his hands of $2,935.

3. The proceedings and exhibits in the complaint, for the purpose of showing what facts are admitted by the defendants.

4. The deposition of Catherine T. Johnson, who resides in Mecklenburg County, Virginia, in which she testifies, in substance: That she duly qualified as executrix of Virginia Johnson, and was afterwards removed; that, through her brother, James Johnson, she employed Mr. W. W. Peebles as her counsel as executrix and trustee under the will, and relied upon him to protect her interests as such executrix and trustee. In reply to the question whether she employed counsel to defend her interests in the proceeding instituted on the 12th of September, 1876, by J. J. Long, administrator *d. b. n. c. t. a.*, to sell the real estate known as " Diamond Grove" to make assets to pay debts, &c., she says: " Mr. W. W. Peebles had been employed as my counsel as executrix and trustee, and I relied upon him, and him alone, to protect my interests as such executrix and trustee about that and every other matter of the estate."

In answer to the question why she failed to file any answer or make any defence to said proceeding, she says:

" I did not know that it was necessary; I did not hear anything from Mr. Peebles, and I thought he would do whatever was necessary to protect my interests, and that he would keep me informed."

8. In said proceeding a final decree was made, directing the distribution of the surplus arising from the sale of " Diamond Grove," after paying the debts of Virginia Johnson. State when you were first informed of said decree, and the order therein directing the distribution of said surplus? Answer: "I first heard of this only a short time ago—within the last two or three weeks—receiving the information through Mr. T. W. Mason. If I had received any information that Mr. Peebles would claim the surplus, after pay-

ing the debts of Virginia Johnson, instead of its coming to me, as executrix and trustee, I should have resisted it, and asserted my claim to it."

The defendants were not present or represented at the taking of said deposition.

The defendant W. W. Peebles was introduced as a witness, and said :

" I never had any connection with Catherine T. Johnson, except as attorney for her in the probate of the will of Virginia A. Johnson, and as her attorney for the administration of that estate, so long as she remained executrix up to the time of her removal, except probably one other time, when she and Dr. Johnson were warranted, and I defended the suit. According to my recollection, she was warranted as executrix ; she never paid me a cent in her life ; neither she, nor any one for her, ever consulted me after she was removed as executrix ; don't remember to have spoken to her, except on the day she qualified ; the business was conducted between me and her brother Dr. James Johnson. I did not dispute Mr. Long's right to sell the land for assets ; I did not attempt to represent any of the defendants in that proceeding ; only represented Mr. Long as his attorney ; never expected anything but my portion of the surplus ; at that time did not expect much from that source. No part of the surplus has ever been paid over to R. B. Peebles ; don't remember whether the costs have been paid, but think they have been. Miss Catherine Johnson never wrote to me about her business after her removal. R. B. Peebles was attorney for J. J. Long in the special proceeding for the removal of Catherine Johnson, executrix. I resisted that motion for a long time ; wrote her that she would be removed if she did not come up and make a showing ; she did not come, and made no return. I suppose she is a trustee under the will ; I did not conceive that I had any other employment from her, but the probate of the will and the

settlement of the administration of the estate; she had no other attorney but me; I can't say that I was Dr. Johnson's general attorney; he acted for his sister. I think Mr. Coningland was his general attorney. My recollection is that he employed me to prove the will and assist his sister in administering the estate while she was executrix; I don't remember whether she was removed before the _____; I bought the interest of Dr. Johnson in the land before she was removed; I did not advise her that I had bought his interest; I did not procure the sale of the land; I did not conceive it was my duty to advise her that I had purchased and claimed the land; I paid a very small sum for it—ten or fifteen dollars. If the sale was made before her removal, then I was her attorney; if made after her removal, then I was not her attorney. When the sale took place under the execution, I don't remember whether she had been removed or not. Mr. J. J. Long claimed about $1,300, and afterwards his administrator, J. T. Gooch, claimed about $500 more. I denied that claim; don't think he ever told me after the sale of the land how much he claimed. I got the commissions for the sale of the land; Mr. Long was appointed commissioner, but I did all the business; I got paid for taking out the letters; I expect one-half of the surplus in my hands to go to me, and one-half to R. B. Peebles. The executions against Dr. Johnson were in the Sheriff's hands before his death, but the sale of the land was made a few days after his death. His interest in the 'Diamond Grove' land was sold by the Sheriff. I did not procure the executions to issue; I only issued those I represented after the others had issued, because I thought they had priority. I had no idea that James Johnson's interest in the land was worth so much. There were divers suits pending against the estate of Virginia A. Johnson, which turned out favorably to the estate. J. T. Gooch, as administrator of Virginia A. Johnson, has a suit against me, claiming

money for her estate. The suit was first as administrator of J. J. Long; then he qualified as administrator *de bonis non* of Virginia A. Johnson. This suit was pending a long time before the present action; in it he demanded this surplus. I resisted paying the money over to Gooch's administrator, V. A. Johnson, on the ground that Long, administrator, had got money enough to pay all the debts. I also paid some costs and charges against her. The balance found in my hands was about $2,935, proceeds of sale of 'Diamond Grove.' If these suits against Virginia Johnson. had been successful, the sale of the land would not have paid me a cent. Can't remember whether the purchase of the land at Sheriff's sale was before or after removal of Miss Catherine T. Johnson. I had no occasion to advise Miss Catherine T. Johnson in the management of the estate, except to defend suits brought against her; I never informed her that I had ceased to act as her counsel; don't remember that Dr. Johnson ever consulted me in regard to his rights under the will. The suit for Miss Catherine Johnson's removal had pended a long time. I regretted her removal very much, on account of the Johnsons and on my own account. I had never used a cent. Dr. Johnson had come up here frequently and consulted me. I complained to R. B. Peebles that I had never received anything, and it was agreed that I might represent Mr. Long in filing the petition to sell ' Diamond Grove'—might be his attorney. I saw Mr. Long; a day was appointed for him to come; he came, and made the affidavit to the petition. It was agreed that I should act for him, do the work and take the commissions. He turned the whole matter over to me, and I really acted as administrator. I was his attorney, and I was also defendant. I was assignee of Dr. Johnson's interest in the land. If there were no debts, R. B. Peebles and I were entitled to the whole. It was my intention to make the debts of Virginia Johnson's estate as small as possible for the interests

of the estate.   I don't see that the positions were antagonis-
tic.   I discharged my duties faithfully to Mr. Long."

The defendants further introduced the record of a suit
now pending in the Superior Court of Northampton County,
in which Catherine T. Johnson, Camilla Johnson and Lula
Johnson are plaintiffs, and J. T. Gooch, administrator of
J. J. Long, is defendant, begun August 25, 1882, for an
account and settlement of the estate of Virginia Johnson.
Also record showing removal of Catherine Johnson, on 23d
March, 1876, and appointment of J. J. Long in her stead, on
April 1, 1876.   Also deed of Sheriff Newsome to W. W.
Peebles and R. B. Peebles, dated April 6, 1876, conveying to
them the interests of Dr. Johnson in "Diamond Grove," and
reciting that the said trust was sold on the 6th day of April,
1876.

The plaintiffs asked the following instructions.

1. If the jury should believe that Catherine T. Johnson
employed W. W. Peebles as her counsel, and relied on him
to protect her interests in the management of her interests
as executrix and trustee, and that he gave her no informa-
tion as to the decree made in the special proceeding declar-
ing that the surplus should go to W. W. Peebles and R. B.
Peebles, then that would be a fraud, and the jury should
answer the first issue, Yes.

His Honor refused to give the instructions prayed for, and
plaintiffs excepted.

His Honor charged the jury as follows: (Only so much of
the charge as is reviewed in the opinion is set out.)

"It is admitted that the defendant W. W. Peebles was
acting as counsel for the petitioner, J. J. Long, administrator
of Virginia A. Johnson, in the special proceeding, and that
he prepared the petition and the orders, which are in his
handwriting.   Now it is alleged that he was also the counsel
of Miss Catherine T. Johnson, who had been executrix of
Virginia Johnson before Mr. Long was made administrator,

and had been removed and Mr. Long appointed in her place; that he was her legal adviser, and was relied upon by her as her general counsel at the time the special proceeding was brought and carried on, and that he acted in that proceeding, not in her interest, but against her, and that such action will not be upheld in the law, but will be declared fraudulent and void.

"On the other hand, the defendant W. W. Peebles avows that he was not her attorney or counsel at the time he conducted the special proceeding. He admits that he had been her counsel and advisor while she was executrix of Virginia Johnson, but he testifies that, from the time of her removal, he ceased to be in the relation of attorney to client, and this is the point for you to determine, and what was paid for the land when the interest of Dr. Johnson in the land was sold, whether a fair price or not. But was he still her attorney or counsel? For, if he was, he could not buy in the land for himself. If he ceased to be her legal adviser when she was removed from executrixship of the estate of Virginia Johnson, and no longer occupied that relation to her, he could bid at the sale of the land, and, if he was the highest bidder, was entitled to be declared the purchaser.

"The plaintiffs having alleged fraud in the transaction, must satisfy you of its truth. If they have so satisfied you, answer the first issue, Yes; otherwise, No.

"2. Is the action barred by the statute of limitations?

On this last issue, his Honor said he would take the responsibility to direct the jury to answer No.

Plaintiffs excepted, for the refusal of his Honor to give the instructions prayed for by them, and also for error in the instructions as given.

The jury responded to the first issue, No.

The plaintiffs moved for judgment, *non obstante vere dicto*, on the ground that the non-resident parties were never properly served with summons in the special proceeding.

His Honor denied this motion, for the reason, as stated by him, that that relief could be obtained by motion in the special proceeding, and plaintiffs excepted.

Plaintiffs then entered a rule for a new trial for the errors already alleged. Rule discharged

Before signing the judgment, the Judge allowed the summons in this action to be so amended as that the plaintiff Gooch might sue, both as administrator *de bonis non* of J. J. Long, and administrator *de bonis non cum testamento annexo* of Virginia A. Johnson.

There was a verdict and judgment for defendants, and plaintiffs appealed.

*Messrs. T. W. Mason, W. C. Bowen* and *W. H. Day*, for plaintiffs.

*Mr. R. B. Peebles*, for defendant.

DAVIS, J.—after stating the facts: Several questions are presented in the record, but we think it only necessary to consider that presented by the refusal of his Honor to give the first prayer for instruction asked by the plaintiffs, and the exception to the charge as given in relation thereto, as these will be decisive of the case upon its merits.

Were the plaintiffs entitled to the first prayer for instruction, which was denied, and if so, was it sufficiently included in the charge as given?

An attorney is licensed by the State to practice law, and is thereby invested with certain rights and privileges, which impose upon him correlative duties and obligations. He is an officer of courts in which he may practice, and occupies a *quasi* official relation to the public, and when he assumes the duties of attorney to client, one of these, undoubtedly, is to communicate to his client any fact within his knowledge relative to the business about which he is employed, that it may be important for the client to know; and having once

assumed the relation of attorney to client, he cannot terminate it at his pleasure, and without notice to his client, so long as anything remains to be done about the matter in which he is so employed. Weeks on Attorneys at Law, § 249; *Walton* v. *Sugg*, Phil. Law, 98.

It is admitted that Mr. W. W. Peebles was attorney for the plaintiff C. T. Johnson, but he insists that he was only her counsel as executrix "for the administration of the estate as long as she remained executrix, up to the time of her removal," and that he ceased to be such when she was removed. She was not only executrix of the will of V. A. Johnson, about which it was his duty to advise her, but she was also trustee under the will, with important duties to discharge as such—a trust that involved rights of her own as well as duties to others. It appears from the record that she was a non-resident, and, in any event, it was the duty of her attorney to inform her of the fact that she had been removed as executrix, and that she had rights as a devisee, and duties to discharge as trustee under the will which remained, notwithstanding her removal as executrix.

These were matters of great importance to her, about which it is manifest she would need counsel, and if he intended no longer to act as such, it was his duty to so inform her, and he could not terminate his relation to her as attorney without so informing her. Needing counsel and having employed counsel, she could not be thus left ignorant of the fact that she had none.

The duty of counsel did not begin with the proceedings instituted for her removal as executrix.

He had been employed long before, and was, what has been usually termed, general counsel and adviser as to her duties under the will, and her duties as executrix and her rights and duties as trustee were so intimately blended that duties of counsel would have been only half discharged if he failed to advise her as to both, and, in the absence of any

notice or information to the contrary, she had a right to regard the relation of attorney and client as continuing, and the attorney could not terminate it without such notice. Scrupulous good faith is required of an attorney towards his client, and even after the relation ceases, the attorney can acquire no rights and assume no obligations in regard to the subject-matter of his advice and counsel antagonistic to the rights and interests of the client, unless the most ample information has been afforded to place the client on her guard. Weeks on Attorney, § 271, *et seq.; Ziegler* v. *Hughes,* 55 Ill., 288.

But it is said that no fees were paid. This cannot alter the case. It does not appear that they were demanded or required to be paid in advance, and she was not notified that payment of fees was necessary as a requisite to the continuance of counsel. Besides, it was not unnatural that she should have supposed that they would be paid in the settlement of the estate, when funds might be in hand to enable her to do so. However this may be, the attorney is not justified in terminating his relation to his client for this reason without notice. Weeks on Attorney, § 316.

Mr. Peebles says: " I suppose she (C. T. Johnson) is a trustee under the will; I did not consider that I had any other employment from her but the probate of the will and the settlement of the administration of the estate; she had no other attorney but me," &c. And again, in regard to the proceeding for the sale of land, &c., he says: " I saw Mr. Long; a day was appointed for him to come; he came and made the affidavit to the petition. It was agreed that I should act for him, do the work and take the commissions. He turned the whole matter over to me, and I really acted as administrator. I was his attorney, and I was also defendant." These were relations that placed his duty and his interest in conflict, and the law will not permit it.

It was not necessary that there should have been any actual fraud in the transaction, but the rule which forbids it, rests upon the broad principle of public policy which precludes persons occupying these fiduciary relations, from representing conflicting interests that may tempt them to disregard duty and lead to injury on one side or the other.

The law will not permit an attorney to represent conflicting interests at the same time, nor will it, after he has represented one side, permit him to become the attorney of the adverse side in regard to the matter in controversy to the detriment of his original client. *Molyneux* v. *Huey*, 81 N. C., 113.

"The relation of attorney and client is usually terminated by the termination of the particular proceeding or business for which he was employed. * * * His authority to act cannot be ended by his own voluntary act to his client's detriment." Weeks on Attorneys at Law, § 249. Again, it is said by the same author, § 258: "An attorney employed, or consulted as such, to draw a deed, or an application for an original title to land, is precluded from buying for his own use any outstanding title. In such case the relation is confidential, and whether he acts upon information derived from his client, or from any other source, he is affected with a trust. The rule is on the ground of public policy, not of fraud, and prevails, although the attorney be innocent of any intention to deceive and acts in good faith."

Mr. Peebles says: "I bought the interest of Dr. Johnson in the land before she was removed. I did not advise her that I had bought his interest. * * * I did not conceive it was my duty to advise her that I had purchased and claimed the land" He afterwards says: "I don't remember (when the purchase under the execution was made) whether she had been removed or not."

It appears from the order of removal, dated March 23d, 1876, and the date of sale, April 6th, 1876, as a matter of fact, that she was removed before the purchase; but it is distinctly stated that she was not informed of it, either before or after, and having acted as her attorney, he could acquire no interest in the matter antagonistic to hers, without notice to her, and the fullest and fairest explanation. *Henry* v. *Raiman*, 25 Penn., 359.

There is another view of the case which we think adverse to the defendants. Even if it were conceded (and we do not think it can be) that the attorney could put an end to his relation, as such, to his client without notice, it was his duty, whether as attorney of J. J. Long, administrator *d. b. n. c. t. a.*, or whether he "really acted as administrator" to protect, as far as he could, the rights and interests of C. T. Johnson, and the others for whom she was trustee, against unjust or improper claims against the estate, it was his interest, as one of the defendants in the special proceeding (in which he acted as counsel for the plaintiff administrator *d. b. n. c. t. a.* and drew all the papers), to assert a claim which it was the duty of the administrator, in behalf of his co-defendants, the devisees under the will, to resist. This conflicting duty cannot be permitted in courts of justice. If it be said that the law allows a creditor to administer on the estate of the debtor, and his interest is antagonistic to that of the estate and of the next of kin, the answer is that this is by statute, and proceeds from necessity, to enable the creditor to collect his debt, because no one primarily interested in protecting the estate will administer. In this case, he does not stand in the relation of a creditor administrator, who, being known as such, is known to be acting in his own interest, as well as for others, and the next of kin, but as counsel for the plaintiff in the special proceeding. In this capacity, it was his duty, primarily, to protect the interests of the estate, and

especially the rights and interests of the devisees. In his capacity as a claimant of the interest of James Johnson, he causes himself to be made a party defendant in the special proceeding with the devisees of V. A. Johnson, and this for the purpose of enabling him to assert a claim, not as a creditor of V. A. Johnson, for whose debts the land was sought to be sold, but adverse to his co-defendants, whose interest it was the duty of the plaintiff administrator to protect and defend, and this without any notice of such a claim, by publication or otherwise, to the plaintiffs in this action (defendants in that), of the existence of such a claim, for, while there is a question as to the sufficiency of the notice by publication, which, in the view taken by the Court, is not necessary to consider, the petition was to sell land to pay the debts of V. A. Johnson, deceased, and the notice stated only this to be the object of the petition, and that there was no personal claim against defendants, and while there was notice that the sale would be confirmed, service was accepted by the defendant only, and there was no service in any way upon the other defendants, the present plaintiffs, and the sale was confirmed and the order for payment and distribution made without notice to any one of record, except the present defendants, who accepted service, and whose interest was adverse to their co-defendants.

It will be seen from the will of V. A. Johnson that the whole of her estate was devised to C. T. Johnson as trustee, for the purposes named. It was so stated in the petition for sale drawn by the defendant W. W. Peebles, and it is not pretended that she had any notice, by publication or otherwise, of this claim by the defendants to the surplus.

It has been held in Mississippi that an attorney, employed to collect a claim against the estate of a deceased man, could not assume the administration of the estate, because, as attorney, he was bound to protect the interest of his client,

and, as administrator, he was bound to protect the interest of the estate. "Under such circumstances," says the Court, "the attorney could not have performed his duty to prosecute the claim, if its validity had been doubtful, consistently with his duty to defend the estate against its collection. Hence a strong temptation would necessarily arise to violate his duty in the latter capacity, and to pay the claim," &c. *Sprink* v. *Davis*, 32 Miss., 152. The law will not permit its licensed attorneys to assume relations that will subject them to this temptation upon grounds of public policy, and it is for this reason that an attorney will not be permitted to represent both sides in any litigated matter. This is too well settled to need citation or authority.

The plaintiffs were entitled to the first instruction asked by them, and it was not covered by the charge as given. There was error in refusing the first prayer for instruction, and also in the second paragraph of the charge as given.

The jury should have been told that, if they believed the evidence, Mr. Peebles could not terminate his relation as attorney for C. T. Johnson without notifying her of what had been done.

Error.