WILSON COTTON MILLS v. RANDLEMAN COTTON MILLS.

*Judgment of Justice of the Peace—Collateral Attack for Fraud—Impeachment of Judgment for Fraud in answer to Creditor's Bill—Attorney Representing both Parties.*

1. Defendant corporation made an assignment for benefit of creditors and plaintiff through its attorney, who was also trustee under the defendant's assignment, split up its account against defendant so as to bring it within a Justice's jurisdiction, and obtained judgments thereon. The defendant made no defence to the actions before the Justice of the Peace because of quieting representations made by the said attorney and trustee. *Held*, that in its answer to a creditor's bill, brought by plaintiff, the defendant had the right, by way of counter claim, to impeach the said judgments for fraud and to demand that they be vacated.

2. In such case the defendant need not set out formally the facts relied upon to show its right to equitable relief, if such right can be gathered from the whole answer.

3. Where the trustee in a deed of assignment was also acting as attorney for a creditor thereunder, a judgment against the assignor in favor of the creditor, rendered on motion of such attorney, will be declared a fraud in law though there was no fraudulent intent.

Petition of plaintiffs to rehear case reported in 115 N. C., 475.

*Messrs. H. G. Connor* and *B. F. Long*, for petitioners.
*Mr. J. N. Wilson*, contra.

AVERY, J.: It is contended for the plaintiffs that while this Court correctly held that the judgment could not be vacated

COTTON MILLS *v.* COTTON MILLS.

unless by " a direct proceeding to set it aside for fraud " and that courts of equity must " refuse aid in cases when their action would be tantamount to appellate jurisdiction " exercised in the correction of errors of law, it erroneously concluded in violation of that principle that they should not be permitted " to have a preference over other creditors."

It is a general rule that equity will, in the distribution of a fund amongst creditors, respect " priorities theretofore acquired." Is the cause before us an exception to that rule? Is it consistent with this doctrine to leave a judgment, that constitutes a lien upon realty, unimpeached, and yet to so interpret the maxim that he who seeks equity must do equity, as to compel the holder of such prior lien to take ratably of the fund arising from such realty with those who had not obtained judgment prior to the filing of the creditors bill?

We think it is clear that if the judgments rendered by the justice of the peace are allowed to remain unimpeached they must have priority, at least, in the distribution of the fund arising from the sale of the real estate of the defendant company. The controversy is therefore narrowed down to the single point whether in such an action as that before us, the defendant could by way of counter claim, set up allegations sufficient for the purpose and directly impeach for fraud the judgments which are the foundation of plaintiff's bill. If it be conceded that the judgments could have been assailed for irregularity only by way of defence in the justice's court, why can not the Superior Court entertain a bill in the exercise of its equitable jurisdiction to set them aside for fraud? If it can, is it not in consonance with the leading purpose in establishing the Code practice to treat like an original bill a sufficient statement of the grounds of impeachment in an answer founded upon them and brought by the judgment creditor against the judgment debtor, and

to allow the latter to set up by way of counter claim any matter growing out of the same transaction and upon which he might have maintained an independent action.

In *Dougherty* v. *Sprinkle*, 88 N. C., 300; Justice RUFFIN, in a well considered opinion, announced as the mature conclusion of the Court that " according to all authorities the court of a justice of the peace is but a common law court and that his jurisdiction does not embrace causes of a peculiarly equitable nature." That doctrine has been approved in many later cases and has thus received abundant support from succeeding courts, if the very statement of it did not carry with it the conviction of its soundness. *Patterson* v. *Gooch*, 108 N. C., 503 ; *Long* v. *Rankin, Ibid*, 333 ; *Farthing* v. *Shields*, 106 N. C., 289 ; *Bevill* v. *Cox*, 107 N. C., 175.

The numerous cases therefore in which it has been settled that a justice's judgment can not be assailed or impeached for irregularities which a court of common law jurisdiction had the power to correct, except by the tribunal in which it was rendered, have no bearing upon the question before us. *Cannon* v. *Parker*, 81 N. C., 320.; *McKee* v. *Angel*, 90 N. C., 60 ; *Morton* v. *Rippy*, 84 N. C., 611 ; *Birdsey* v. *Harris*, 68 N. C., 92.

If the defendant had sought to set aside the judgment on the ground that its assent to the rendition of it was procured in such a way as to render it voidable for fraud in law, it would have been compelled to invoke the aid of a court of equity when law and equity were administered in different courts. Now that both are administered in the same Court and often in the same action, if the equity is sufficiently alleged either in a complaint or by way of counter claim in an answer to a cause of action founded upon the judgment, the party seeking the relief may, upon proof of the averments relied upon to establish the fraud,

demand that the judgment be vacated.   If the defendant company had the right to bring an independent suit to impeach the judgment, it might have instituted it within the time prescribed in Section 155(9) of *The Code*, and the plaintiff could not forestall the assertion of such right by first commencing the suit upon the judgment.   As was intimated by Justice MacRae, the action afforded the first and an early opportunity to the defendant to set up its equity in its answer to the creditor's bill.   It was not material that the facts relied upon to establish the right to equitable relief should have been formally set out.   It is sufficient if they can be gathered from the whole answer, and appear to have been proven before and found as facts by the referee.   *Geer* v. *Geer*.   The Court say in the opinion ( page 488 ) " We are bound by the findings of fact.   The findings of fact of the referee will show that plaintiff's attorney, who was at that time a trustee in the deed of assignment, had access to the books of the defendant corporation to compare the accounts of his clients, The Wilson Cotton Mills, with the accounts stated in defendant's books; that he split up said accounts against defendant, a large part of which had been settled by acceptance; that he represented that by so doing and reducing the same to judgment, he only desired to reduce The Wilson Cotton Mills' claim to judgment in order to put them on an equal footing with the indebtedness due banks and to prevent their running out of date.   It is found in sections 24 and 25 that while the representations made to Sharpe were not made with the intent that they should be communicated to defendant's president, Worth, they were so communicated and no defence was made to the action before the Justice." The further facts that are material and that may be gathered from the admissions and the findings of the referee may be summed up as follows:   On December 10th, 1890,

the defendant company at a meeting of its stock-holders directed its president to execute an assignment, and that on the following day, 11th of December, 1890, the deed was prepared, naming T. C. Worth as sole trustee, but, at his own request, the name of S. A. Woodard, plaintiff's attorney, was inserted as co-trustee. Woodard thereupon immediately accepted the trust, in order that he might protect his client, the plaintiff company, and continued to be a trustee until the 21st of January, 1891, two days before this action was brought, on the 23rd of January, 1891. Both Worth and Woodard were ultimately appointed by the Court receivers on the 5th day of February, 1891, and gave bond and assumed control in that capacity. Meantime the trustee Woodard had obtained, as attorney for the plaintiff, as set forth in the opinion, about thirty-six judgments, by splitting up seven accounts ( all for sums in excess of $200 ) and a draft for $2,992.82, and had caused all of the judgments to be docketed in the Superior Court of Randolph County, either on December 22nd, 1890, or January 24th, 1891. B. C. Sharpe was the duly constituted agent of T. C. Worth, trustee, and president of defendant company, and as such took charge of the books and supervision of the business for Worth. These facts will appear by reference to findings Nos. 13, 14, 15, 16, 19 and 21.

The rights of the defendants, which grow out of these transactions, are in no way impaired or affected by the fact that S. A. Woodard departed from his instructions in accepting the place of trustee or in any way exceeded his authority as attorney for plaintiff. When the books were examined and the accounts were split up and reduced to judgment, he was still co-trustee of Worth and was acting also in the antagonistic capacity of attorney for the plaintiff. He was known to Worth, his associate in the trust, to be an attorney, as sufficiently appears from the findings,

and when Worth received through his agent Sharpe, the assurance that Woodard's purpose was only to place 'the claims of his client's on an equal footing with the debts due banks, their relations were such that Worth was warranted in trusting to him as an attorney to protect the interests represented by both. Woodard was one of the trustees at the time, in possession of the property and accountable for it to the assignor and the creditors, and sustained such relations to the defendant company as entitled its president to expect that, while such relations continued, he would refrain from taking, as an attorney of an adversary party, any judgment that would bind its property.

Though an attorney acts in good faith for both plaintiff and defendant in any action or proceeding in the Courts, it is well settled that any judgment entered upon his motion against either party, for whom he appears as an attorney, and in favor of the other will be set aside, on the ground that it is a fraud in law. *Molyneux* v. *Huey*, 81 N. C., 106; *Arrington* v. *Arrington*, decided at this Term; *Moore* v. *Gidney*, 75 N. C., 34.

However innocently or honestly Mr. Woodard may have acted in his zealous efforts to advance the interests of his original clients, until he placed himself at arm's length by notice that he had ceased to act as trustee, Worth was excusable for being misled by his representations that he would so manage the claims of the plaintiff as to leave the assets of the insolvent company to be distributed as provided in the deed under which both were acting as trustees. *Gooch* v. *Peebles*, 105 N. C., 411. Knowing his associate to be a lawyer, Worth was justified in confiding more implicitly in any assurance as to the legal effect of his proposed conduct of the suits before the Justice of the Peace. No man can maintain a suit against himself even in his fiduciary capacity, and it was upon this principle that the

law placed the claim of a personal representative against the decedent of whose estate he has charge, on an equal footing with a judgment for demands of the same kind held by other creditors. Where two adversary parties to an action are both warranted in trusting to an attorney to protect their interests involved in the controversy, as occasion may demand, a judgment rendered on motion of such attorney, though he may have no actual fraudulent intent (as seems to be conceded in this case) is deemed fraudulent in law. *Arrington* v. *Arrington, supra.*

We think that the reason upon which this doctrine is founded requires its application to a case where an attorney is counsel for a plaintiff, who is suing the attorney as a trustee or those he represents in his fiduciary capacity and seeking to gain an advantage over both the trustor and *cestuis que trust.* It is not material that Worth was sued as president of the defendant company when he was acting in the dual capacity of trustee and president. It was equally his duty as trustee and president, as far as possible, to see that the purpose of the assignor, the defendant company, as expressed in the deed, until that was set aside by the Court, was carried into effect by preventing the plaintiff company from acquiring a lien that would give it priority. Knowing that the other trustee had accepted a trust which imposed upon him the same duty, Worth was warranted in relying upon him to carry out the purpose expressed to Sharpe and communicated subsequently to him.

We forbear, because it is needless to do so, to enter upon the discussion of the other question suggested on the first argument of the case, whether an assignment by a corporation which provides for a ratable distribution of the proceeds arising from the sale of all of its property, should not be upheld as valid, on the ground that it is not within the letter of the statute (*The Code*, Sec. 685). While, therefore,

we arrive at the conclusion upon a different principle, we think that it was correctly held that the assets should be ratably distributed. But in order to allow that the Court below should have vacated the justice's judgments in favor ·of the plaintiff on the ground that facts sufficient to warrant such a decree were alleged and proven by the defendant company.

The Petition is Dismissed.