## BIGPOND v. PAGE et al.

No. 16371. Opinion Filed Dec. 7, 1926.

All Petitions for Rehearing Denied July 5, 1927.

1. **Guardian and Ward—Action to Cancel Guardian's Deed for Fraud and Inadequacy of Consideration—Sufficiency of Evidence.**

Where the petition alleges facts and circumstances from which it conclusively appears that the attorney conducting the guardian sale of real estate in the county court was in the employ of the purchaser in such sale, and the same was made in the interest of the purchaser rather than the minor, and it is further stated that the sale was made for an inadequate consideration, and plaintiff's evidence clearly establishes the facts alleged, it is error for the court to sustain a demurrer to the evidence or motion for judgment upon the evidence.

2. **Same—Vendor and Purchaser—Innocent Purchasers—Burden of Proof as Defense.**

The plea of innocent purchaser is affirmative, and must be pleaded and proved, and where defendant pleads that he is such purchaser for value and the issue is joined by general denial, and plaintiff's evidence is consistent with the general denial, it is error for the court to sustain a demurrer to plaintiff's evidence and dismiss his cause of action.

3. **Same—Judgment Denying Cancellation of Deed not Sustained.**

The evidence examined, and held contrary to the judgment, and a new trial is ordered.

(Syllabus by Threadgill. C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Louis Bigpond, a minor, by guardian, against Charles Page et al. to cancel deed and for possession of an interest in real estate. Judgment for defendants, and plaintiff appeals. Reversed.

Geo. S. Ramsey, George Paschal, W. A. Chase, Edgar A. de Meules, Villard Martin, and Burt & Keenan, for plaintiff in error.

C. B. Stuart, Chas. A. Coakley, E. J. Doerner, Paul Pinkerton, H. O. Bland, and Linn & Spradling, for defendants in error.

Opinion by THREADGILL, C. This action was brought by plaintiff in error, as plaintiff, against defendants in error, as defendants, to cancel a guardian's deed, and for possession of an undivided 1/3 interest in and to the S. W. 1/4 of sec. 6, and the N. W. 1/4 of sec 7, T. 18 N., R. 12 E., in Creek ·

county, and for damages in the sum of $503,-000.

Plaintiff was a full-blood Creek Indian, enrolled as a new-born opposite roll No. 935. He was the only child and sole and only heir at law of his father, James Bigpond, who was a member of the Creek Tribe of Indians with roll No. 7016. Said James Bigpond died intestate during the year 1904 near Bristow, Indian Territory, and in what has been Creek county since statehood, and left surviving him his wife, mother of plaintiff, whose name was Pelah, and who died intestate during the year 1908 in said Creek county. Said James Bigpond had two half-sisters, Martha Bigpond and Emma Billie, the three having the same father, whose name was Billie Bigpond. The two half-sisters were full-blood Creek Indians with roll Nos. 8914 and 5944, respectively. Said Martha Bigpond died in September, 1900, intestate and without issue, and left surviving her as her only heirs two half-brothers, one being said James Bigpond and one John Bigpond. Roll No. 3432, one full brother, Jonas Billie, No. 5945, and two full sisters, Emma Billie, Roll No. 5944, and Lina Billie, No. 5946, all full-blood Creeks. Said Jonas Billie died intestate and without issue and unmarried, leaving surviving him two half-brothers, being said James and John Bigpond, and two whole sisters, being said Emma and Lina Bigpond. Said Emma Bigpond died intestate and without issue during the year 1906, leaving surviving her a husband, Colbert Rogers, who died during the year 1907, one whole sister, Lina Billie, and a half-brother, John Bigpond, and plaintiff, the sole and only child and heir of her deceased brother, James Bigpond. Said Emma Billie died seized of her own allotment and undivided 1/4 interest in the allotment of her deceased sister's allotment, being said Martha Bigpond. The plaintiff inherited, by right of representation, his father's interest in the allotments in controversy above described. In 1909 plaintiff's interest in said allotments, estimated at 1/4, was sold at public sale. under the orders of the county court of Creek county, by his guardian, C. C. Don Carlos, to Charles Page for $1,000, and on September 20 the court confirmed the sale, the guardian executed the deed, and the same was placed of record. Thereafter, on March 25, 1911, said deed was approved by the Secretary of the Interior, upon the payment of an additional consideration of $2.500. The attorney that represented the guardian in the sale received two checks from Charles Page in connection with the sale, one for

$1,000, made to the guardian, and one for $1,500, made to the attorney. At the time of the sale, and prior thereto, Page had purchased and owned the interests of the other heirs in the two allotments. Prior to the sale proceedings, said Page and W. H. Roesser had a departmental oil and gas lease on the lands, and on June 25, 1908, he reported to the United States Indian Agent at Muskogee that he had on June 15 brought in a second gas well on the land of 20,000,000 feet capacity per day and verified the report. On the same day he reported the other gas well on said land as of 2,500,000 feet capacity per day. discovered about April 18, 1908. On February, 1909, Page enclosed to the Indian Agent at Muskogee a check for $300 as a royalty on the two gas wells, and asked him to hold the money, stating that the land was a "dead claim," that he had approved deeds to all of it, with the exception of a small interest, that he was then taking through the court, which would give him complete title.

On April 30, 1910, the Texas Company, one of the assignees of a part interest in the lease, wrote the Indian Agent as follows:

"Replying to your letter of 22nd inst. with reference to Creek lease royalty No. 2413, executed by the heirs of Jonas Bille and Martha Bigpond, deceased, will say: On October 5th, 1909, Mr. Charles Page of Tulsa Okla., served notice on us that he was the owner of this land and to hold the royalties accruing therefrom until such time as his deed was approved. Since said notice was served, we have paid no royalties and are now holding 16,463.90 barrels of oil as shown by the enclosed statement."

March Oil Company claimed as an assignee under the departmental lease of June 1, 1907, and by a contract with Charles Page and one C. W. Kinney of May 16, 1911. The Gypsy Oil Company and Gulf Pipe Line Company are conceded to be innocent purchasers for value. It appears from the record that before the plaintiff minor's 1/4 interest in the land was sold at public sale, the same was appraised by order of the county court at $2,900. At the time the sale was made there was an oil well on the land, as well as the two gas wells above mentioned, brought in on June 28, 1909, and producing 269.72 barrels of oil per day.

The plaintiff pleaded the facts and terms of the sales transaction and copies of the sales record, and stated the age of the minor to be about four years at the time of the sale, and the condition of his estate and the amount of his income showed there was no necessity for the sale at the time, and

contended that the attorney conducting the sale for the guardian represented defendant Page against the interest of the minor, and for the fraud practiced in this respect and the inadequate price paid for the land, the deed should be canceled and he should have possession and damages.

The defendants answered, admitting the title as deraigned by plaintiff and the sale proceedings, but denied the fraud alleged, and the inadequacy of the consideration paid. The issues were tried to the court without a jury, and at the close of plaintiff's evidence, upon demurrer to same by all the defendants, the court sustained the demurrer and dismissed the petition, and plaintiff has appealed and contends that this was error and the judgment should be reversed.

We have examined all the evidence in the case and find that the defendant Page was in possession of the lands in controversy since about April or June, 1906, exploring for oil and gas, under a departmental lease with Emma Billie and a part of the heirs of Martha Bigpond, deceased. The two gas wells were brought in in April and June, 1908, and on February 1, 1909, the defendant Page sent a check of $300 for the gas royalty to the Indian Agent at Muskogee and the said agent was requested to hold the money until Page could put through a sale for plaintiff's interest in the lands, claiming that he owned all the interests of the other heirs. On June 28, 1909, defendant Page completed an oil well on the Martha Bigpond allotment of 269.72 barrels production, and on July 6, 1909, the guardian, C. C. Don Carlos, represented by attorney Wm. L. Cheatham, filed his petition to sell the 1/4 undivided interest of the minor, this plaintiff, in the two allotments. The sale was completed in December, 1909. during which time the oil well produced 26,402.04 barrels of oil. On the day the sale was confirmed and the guardian's deed executed, the defendant Page delivered to the attorney for the guardian two checks, one for $1,000 and one for $1,500, in connection with this sale. This was according to the testimony of C. F. Tingley, custodian of the records of Charles Page. His testimony in part is as follows:

"Q. I hand you the ledger, Mr. Tingley, and there appears on page nine of that ledger an account, what does that cover? A. Covers part of the year 1909. Q. Now, this record shows that on July 7,—this is 1909? (There were objections by all the defendants which were overruled except as to Kinney, Gulf Pipe Line Company, and Gypsy Oil Company). A. That is what the records show. I haven't looked at the vouch-

er and don't know what it shows—just what that covers. Q. At the bottom of the page number ten appears 'See page 16, that transfers the account to page 16 of this ledger? A. Yes, sir. Q. And on page 16, under the date September 20, 1909—is that 1909? A. Yes. sir. Q. William L. Cheatham, an entry dated September 20, 1909, 'William L. Cheatham. ck. 1421.' what's that? (Pointing) A. That is the page of the cash book. Q. 'Page of the cash book 66, $1500.00,' entry September 20, 1909, 'William L. Cheatham. ck. 1422,' cash book page 67 amount one thousand dollars.' That shows the amounts that were paid for the land in this account as paid for it? A. That is a part payment. Q. Part payment? A. Yes, sir. Q. These payments as set out above were made in the original guardian sale and administrator's, were they not? A. I don't know what they were for—he was the attorney—I don't remember. Q. They were made in the original guardian's sale, though? A. Yes, sir."

On cross-examination:

"Q. As you recall, William L. Cheatham was attorney for the guardian, and that the items shown by this book and to which you heretofore testified, was a portion of the consideration paid for the land? A. It was. Q. And it was paid to William L. Cheatham, as attorney for the guardian? A. That's the way I remember it."

The record shows that there was an administrator's sale in the administration of the estate of James Bigpond, deceased, in which the attorney, Cheatham, represented the administrator, the same C. C. Don Carlos, and the land was sold for $601 and confirmed by the court July 6 1909. But the evidence of the ledger and testimony of C. F. Tingley show that the $1.000 check and the $1.500 check were given to Cheatham in connection with the guardian's sale, and the cross examination of the witness failed to shake this evidence. The question is general and so is the answer. There was no effort to go into details with the witness, and his answer does not change the effect of the direct testimony.

We must, therefore, conclude that the defendant Page paid the attorney for his services in the guardianship sale $1,500, $500 more than the price of the minor's interest in the land. It seems that this is the transaction the court had in mind when passing on the demurrer to the evidence and caused him to say: "I will admit that there are some things between Page and Cheatham that do not smell exactly right." However, the court was of the opinion that there was no fraud because the minor's interest in the land was appraised before the sale, although not necessary since the sale was public. The court seemed to think that everything was done open and aboveboard and the minor's interest in the land was appraised before the sale at $2,900 and the sale was public and there could be no fraud. In this we cannot agree with the court. The appraisement was not necessary, yet the county court ordered it, and for what purpose we are not informed, since none of the parties, not even the court. regarded it in the sale. It is plain that the county court had more confidence in the value placed on the minor's interest in the public sale than it had in the value fixed by the appraisement, or else was very careless in protecting the interest of the minor in the sale. It must be observed that defendant Page, in writing to the Indian Agent at Muskogee on February 1, 1909, when he sent the $300 royalty check, asked that the money be not paid out since he owned all the interests in the land except a small interest he was then taking through the courts. It appears that he considered the sale his affair and he desired to direct the royalty payments in his own interest before the sale was made. He paid the attorney, representing the guardian, for his services in putting the sale through the county court without any order. direction, or approval of the court, and, under all of these circumstances, the presumption must be indulged that the attorney represented the interest of the purchaser rather than the interest of the minor. All the facts and circumstances of this case, as shown by the admissions of the parties and the evidence of plaintiff, the partial interest of Charles Page in the lands and his desire to own all the interests the oil and gas development and its proven resources of the land in this respect, the value of the interest bought at the guardian sale in comparison with the fee paid the attorney. point to but one conclusion, that the attorney of the sale represented the interest of the purchaser rather than the interest of the minor. This makes out a case of fraud on the court, as well as the minor, extraneous to the record.

The general rule as to the relation of an attorney and his client is stated in 6. C. J. 621, section 106, as follows:

"The relation of attorney and client is of such an important nature that the courts will not allow an attorney to act in any capacity or assume any duty inconsistent with his office of attorney or duty to his client. Public policy also demands that an attorney shall not act in any other capacity where his duty would be incompatible with his duty as an attorney."

See, also, Thornton on Attorneys At Law, section 174; In re Boone, 83 Fed. 944; Williams v. Reed, 29 Fed. Cas. 17733; In re Cowdrey (Cal.) 10 Pac. 47; People v. Gerold (Ill.) 107 N. E. 165; Arrington v. Arrington (N. C.) 21 S. E. 181, Wachsmut v. Miller (Iowa) 168 N. W. 344. In this last case the court said:

"Another reason given by the trial court for setting aside the deed is the fact that Eggert & Lockwood, or one or both of them, were, acting as attorneys for the defendant, and they admit that they were acting as attorneys for deceased and received compensation from her for carrying the transaction through. It is conceded by defendant that these attorneys were acting for both the deceased and the defendant. Defendant conceded the rule as to the duty of an attorney to his client, and that he may not act for the adverse party in the same suit, even though his motives are honest, but they contend that when the parties are not adverse, or when the client's interests are not hostile to those of the other party. the attorney may act for both parties if he acts in fairness and good faith. * * * It is thought by counsel that the finding against the defendant reflects upon the attorneys. It is not our purpose to do that. We have stated the facts somewhat briefly, it is true, but, conceding that they were upright in the matter in so far as their motives and intentions were concerned, still it appears to us that the situation was such that interests of deceased and the defendant were hostile. The rule in regard to attorneys acting for the different parties, as it is conceded to be by defendant, under such circumstances is wholesome, even though it be conceded that from their standpoint they were acting honestly. We think the court properly took this into consideration with the other circumstances in the case."

See, also, Gooch v. Peebles (N. C.) 11 S. E. 415; Smith v. Gordon (Conn.) 59 Atl. 507; Wilson Cotton Mills v. C. C. Randlemen, et al. (N. C.) 21 S. E. 431; Parker v. Parker (Ala.) 13 So. 520; Shearman v. Cooper (Ill.) 128 N. E. 559; West v. Waddill, 33 Ark. 575; McKinley v. Williams, 74 Fed. 94.

Plaintiff contends that where the relation of attorney and client is abused, as it appears in this case, no proof of intent to defraud is necessary, neither is it necessary to show that damages resulted from the abuse of the relation, and the rule, as stated in vol 2, Equity Jurisprudence by Pomeroy, section 956, is cited to support the contention. This rule reads as follows:

"Wherever two persons standing in such a relationship that, while it continues, confidence is necessarily reposed by one and the influence which naturally grows out of this confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain this advantage although the transaction could not have been impeached if no such confidential relation had existed."

The meaning of this rule is stated in the next section (957) as follows:

"The first class includes all those instances in which the two parties consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealings some conveyance, or contract or gift. To such cases the principle literally and directly applies. The transaction is not necessarily voidable; it may be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith. of full knowledge, and of independent consent and action. The second class includes all those instances in which one party, purporting to act in his fiduciary character, deals with himself in his private and personal character, without the knowledge of his beneficiary, as where a trustee or agent to sell, sells the property to himself. Such transactions are voidable at the suit of the beneficiary, and not merely presumptively prima facie invalid."

It is contended that the rule is further exemplified in the celebrated case of Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076. We have examined these authorities and are fully pursuaded that the rule is applicable to the case at bar, under the evidence before us. We are also of the opinion that the rule of double agency is applicable, as defined by Mechem on Agency, 2nd Ed., vol. 2, section 2138, to render the sale voidable at the suit of the minor.

On the point that no actual damages need be shown, under the above rules. we are cited to Hindman v. O'Conner, 54 Ark. 627, 16 S. W. 1052; 13 L. R. A. 490; Frazier v. Jeakins (Kan.) 68 Pac. 24; Hare v. De Young, 79 N. Y. S. 868; Burton v. Compton, 50 Okla. 365, 150 Pac. 1080; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Arrington v. Arrington, supra; Wachsmut v. Miller, supra; Gooch v. Peebles, supra; Wilson Cotton Mills v. C. C. Randleman, supra; Olson v. Lamb (Neb.) 76 N. W. 433; Sypher v. McHenry, 18 Iowa, 232; West v. Waddill, 33 Ark. 575. We think the point is well supported.

In answer to plaintiff's contention that the attorney, conducting the sale proceedings in the county court was in the employ of the defendant Page rather than the guardian for

his ward as shown by the $1,500 fee paid him, the defendants cite us to the case of Wiley v. Gypsy Oil Company, 115 Okla. 120, 242 Pac. 189, in which it was held:

"In guardianship proceeding for the sale of an oil and gas mining lease upon a minor's land, the mere fact that the successful bidder has agreed to pay or does pay the fee to the attorney for the guardian who conducts the proceeding is not sufficient, in the absence of fraud, to invalidate the proceedings or void the contract."

The facts in the two cases are so far and wide apart that the rule announced in that case is not an answer in the instant case. There was no fraud shown in that case while in this the facts and circumstances, as above pointed out, show that the attorney was employed by the prospective purchaser to put through the sale in his interest rather than in the interest of the minor.

Plaintiff further contends that his evidence was sufficient to show that the minor's interest in the land was sold for a grossly inadequate price. One witness testified that the actual value of the land was about $32,000, and the 1/4 interest of the minor would be worth $8,000. We think this evidence reasonable in view of the fact that a proven oil and gas field was established, and, although oil and gas were cheap at that time, yet Page and the attorney of record, and the guardian, C. O. Don Carlos, knew that this land was very valuable, even if the ordinary citizen and the court did not know it. But the said 1/4 interest of the minor, as the same was estimated, was sold for $1,000 and the attorney got $1,500 for putting through the sale, and the Department of the Interior would not approve the deed until Page paid an additional $2,500, which, of course, was no part of the sale proceedings upon which the deed was based, and we only refer to it here as a circumstance to show the inadequacy of the consideration paid for the deed in the probate sale. We think the $1,000 consideration, under the facts proved, was unconscionable, and, taken in connection with the fraud that appears from the other facts and circumstances of the case as above pointed out, was sufficient to make out a prima facie case to entitle plaintiff to the relief prayed for. Haggerty v. Haggerty, 268 Ill. 295, 109 N. E. 34; Stevenson v. Gault, 131 Ark. 397, 199 S. W. 112; Graffain v. Burgess, 117 U. S. 180, 29 L. Ed. 839; Johnson v. Avery (Minn.) 62 N. W. 283, Kemp v. Heim (Wis.) 3 N. W. 831. See, also, Oswald v. Johnson, 140 Ga. 62, 78 S. E. 333, in vol. 34 Am. & Eng.

Cases, page 8, for many illustrations of inadaquacy of price.

Defendants contend that there were no acts of fraud disclosed by the evidence, and that, at the most there were only suspicious circumstances. We cannot agree with this contention. It is not easy to point out one particular act of fraud as sufficient to support the charge, but considering all the transactions together, the reasonable mind cannot conclude otherwise than with plaintiff's contention. In the case of Brooks v. Garner, 20 Okla. 236, 94 Pac. 694, the court quoted with approval the rule of Wait on Fraudulent Conveyances as follows, which we think is applicable to the instant case:

"Badges of fraud are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible indicia of fraud are so numerous that no court could pretend to anticipate and catalogue them. A single one may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."

See, also, Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65.

The defendants, except Page, contend that the evidence was not sufficient against them, and the demurrer was properly sustained on the ground that they were innocent purchasers for value.

We have carefully considered the argument on this point and we find that there is no evidence in the record that the assignees of the defendant Page were such purchasers. This plea is an affirmative defense and must be pleaded and proved by the purchaser. In the case of McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, the court said:

"The defendants in error contend, however, the petition does not state a cause of action, for the reason that the parties are innocent purchasers; but that claim is not available at this time, nor can it be considered by the court at this time. If the defendants are innocent purchasers, it will be necessary for the defendants to plead and prove such fact. Such was the holding of this court in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220, and in Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907. As to the rights of innocent purchasers, it is unnecessary for us to determine their rights, or whether they have any, until that question is presented."

See, also, Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907.

We are, therefore, of the opinion, and so

hold, that there is no merit in the contention of the defendant assignees that plaintiff's evidence was not sufficient to make out a case against them. We think it was sufficient against the defendant Page and also against the other defendants.

The cause is, therefore, reversed and remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 1196, §343 (Anno). (2) 38 Cyc. p. 1548; 39 Cyc. pp. 1770, 1778, 1787. (3) 9 C. J. p. 1256, §195.