(18 Misc. Rep. 663.)

## MYERS v. MYERS et al.

### In re NEW YORK LIFE INSURANCE & TRUST CO.　In re FAHYS et al.

### In re THIRD NAT. BANK.

(Supreme Court, Special Term, New York County.　December, 1896.)

1. PARTNERSHIP—DISSOLUTION—RECEIVER.
   A receiver appointed in voluntary dissolution proceedings has, where the partnership is insolvent, an equitable interest in the property as trustee for the creditors, which is superior to an attachment or execution issued after his appointment.

2. SAME—PROOF OF INSOLVENCY.
   The court may hear evidence as to the insolvency of a partnership, on an application by creditors for leave to levy on the partnership property in the hands of a receiver appointed in voluntary dissolution proceedings, where the pleadings in the action to dissolve do not disclose whether the partnership is solvent.

Action by Samuel F. Myers against Marcus A. Myers and Simon Blumauer, plaintiff's co-partners in the firm of S. F. Myers & Co., to dissolve the partnership.　Certain creditors move for an order directing the receiver appointed in the dissolution proceedings to permit a levy on the partnership property.　Denied.

B. F. Einstein, for receiver.
Stern & Rushmore, for New York Life Insurance. & Trust Co.
Delafield & Gould, for Joseph Fahys & Co.
Shearman & Sterling, for Third Nat. Bank.

BEEKMAN, J.　Practically, the controversy here is between the attaching and judgment creditors of the firm of S. F. Myers & Co. and their general creditors.　If the claims of the former to a preferential lien upon the property in the hands of the receiver are well founded, there will be little, if anything, left for the latter, who are over 600 in number, with claims aggregating about three-fourths of the entire indebtedness.　The property of the insolvent estate is now in the hands of the court, and, if it be possible to do so without transgressing the plain mandate of the law, the fund should be retained intact for distribution pro rata among all of the honest creditors of the partnership.　A court of equity in such matters is guided by the maxim that equality is equity,—a principle which is in accord with the rules of right and good conscience, and therefore with the spirit which molds and directs the course of equity jurisprudence.　There is no conflict between this principle and that which declares that the vigilant creditor shall receive the rewards of his diligence, which means—and it can hardly mean more—that the vigilant creditor will not be deprived by a court of equity of any advantage or right which he has honestly gained by pursuing the remedies which the law places at his disposal before the subject-matter affected has come under the control of the court.　But, when such control has once been lawfully acquired, there is no rule which can override the principle that equal justice must be done to all.

Whether the property in the hands of the receiver in this case is subject to the application of this rule is the matter now to be determined.

At the outset, it is proper to note the fact that the affidavits upon which these motions are made are, to a large extent, based upon information and belief, unaccompanied by any statement of the sources of such information or the grounds for the belief expressed, and no reason is given why the affidavits of the informants are not produced. It is needless to say that such allegations have little, if any, probative value. Bank v. Alberger, 78 N. Y. 252. The facts of the case, then, are such only as appear from the proofs distributed through the papers on both sides, which are not open to this criticism. The questions which are submitted for decision are the same in all of the cases, except one, which is peculiar to the claim of the New York Life Insurance & Trust Company. That question is one of priority arising out of a dispute between the company and the receiver as to whether, in point of time, the lien of the receivership had vested before the levy of the attachment. It was fully argued before Mr. Justice Pryor on a former motion, and was decided by him in favor of the receiver. Upon this point no additional proofs have been submitted to me, and, in accordance with the established custom of the court in such cases, I shall follow his decision, and pass immediately to the consideration of the other points which have been raised.

In August, 1896, an action was commenced by Samuel F. Myers against Marcus A. Myers and Simon Blumauer, who, together, were co-partners, doing business under the firm name of S. F. Myers & Co., for a dissolution of the partnership and the appointment of a receiver. The defendants consented in writing to such appointment, and an order was thereupon made and entered appointing Louis Clark, Jr., such receiver, who was required to give, and has given, security in the sum of $200,000. On the same day the trust company obtained an attachment against the firm, and thereafter attachments were also obtained by the Third National Bank and by Joseph Fahys & Co., the creditors last named having also, subsequent to the receivership, obtained judgments against the partners, upon which executions have been issued. These judgments are founded upon claims outside of those which are represented in their attachment proceedings. Motions are now made by these creditors for orders directing the receiver to permit the sheriff to levy upon the property in his hands under said attachments and executions. The grounds upon which these motions are based are that the action in which the receiver was appointed was collusively and fraudulently brought, and the appointment of the receiver obtained, for the purpose of hindering, delaying, and defrauding creditors; also, that the complaint does not allege the insolvency of the firm; and that the action is not, therefore, brought for the purpose of securing, under the direction of the court, an administration of the assets, and their distribution pro rata among the creditors.

I cannot undertake here a critical review of the facts of the case, but will briefly outline the principal points relied upon by the attaching creditors to establish their contention:

(1) The conveyance of certain real estate of the firm, made just before the appointment of the receiver, to the wife of one of the partners, and which they claim was made in payment of a debt which was owing to her by the firm. It is contended by the attaching creditors that there was no such indebtedness, but that, if there was, then the consideration was grossly inadequate. There is evidence tending to show that, according to the books of the firm, she had been a creditor thereof since the year 1888, and that, at the time of the conveyance of the property in question, such indebtedness amounted to the sum of $80,802.72. This sum, according to the affidavits of the partners, represented the aggregate of loans made by her to the co-partnership from time to time since the year 1888. The attaching creditors rely upon statements which had been previously made by members of the firm with respect to the value of this property, which, if true, would tend to justify the contention that the transfer was for an inadequate price. That such statements were made is doubtless true. They may even have been made fraudulently, with the intention of securing thereby a fictitious credit, but that does not estop the receiver or any one else from showing actual value, for the material question in this connection is, not what these people represented the value to be, but what such value actually was. The one piece of disinterested evidence on this subject is found in the affidavit of Mr. Harnett, an acknowledged real-estate expert, who rates the value of this property at a sum not exceeding $325,000. On this basis, the property having been conveyed subject to a mortgage of $275,000, the consideration was ample, assuming that the debt to Mrs. Myers was a valid claim against the partnership; and upon this point there is more proof that it was than that it was not.

(2) Other preferences given by the firm before the appointment of the receiver. The extent of these does not appear beyond the payment of $10,000 upon a debt that was owing a firm of which the receiver was a partner. This the receiver explains, and with respect to both this claim and the others there is nothing to show that the debts were not bona fide ones.

(3) The fact that, shortly after the appointment of the receiver, a corporation was formed entitled the S. F. Myers Company, with an authorized capital of $10,000 and an initial capital of $500, the stockholders being Marcus A. Myers, Simon Blumauer, and Adelaide P. Myers, the wife of Marcus, who holds 48 shares, of the par value of $10 each, the other two holding 1 share each. The corporation was organized for the purpose of carrying on the same kind of business as that of the old firm. It is charged in this connection that the receiver has been turning over orders which came in to him, as successor to the firm, to this corporation to be filled by it, and has supplied the goods necessary for the purpose at prices much below their value, and has packed and for-

warded such goods to the purchasers from the corporation at the expense of the estate. It is also alleged that the receiver is seldom at the place where the business of the receivership is being conducted, and that the management of his trust is confided to Simon Blumauer, a member of the old firm. This, it is claimed, develops the corrupt scheme conceived when the action was brought, by which, through the aid of a friendly receiver of their own choice, the partners intended to control the management of the property for their own advantage, while withholding it from their creditors. All of these charges, however, the receiver either emphatically denies or satisfactorily explains in his affidavits. He is a reputable merchant, under heavy security for the proper performance of his duties, and his credit as a witness does not seem to be open to question.

Two other matters are referred to as evidence of this alleged fraudulent design which is charged as the motive of the suit and the receivership. One is a certain notice which appeared in the Jewelers' Weekly, to the effect that the old business of the firm would be carried on by the corporation; but Mr. Townsend, who is given by the paper as their authority for the statement, expressly repudiates it. The other is a circular issued by the corporation the S. F. Myers Company, presumably to the old customers of the firm, stating that, as the receiver was only able to sell for cash, the company was prepared to fill orders on the old terms; that is, upon credit. The receiver swears that he had no knowledge of, nor anything whatsoever to do with, the issuing of any such circular. As it was also true that the receiver had no right to sell except for cash, this item of proof contributes little towards the support of the charges. It is also proper to say here that the charges thus made by the attaching creditors, and to a large extent the facts upon which they are based, are denied by the partners under oath, who, among other things, assert that the organization of the corporation was an afterthought, and that there was no other purpose in view in bringing the action and securing the appointment of the receiver than to insure a pro rata distribution of their property among their creditors. It is true that the moving papers contain detailed charges against them of fraud in contracting the debts in suit, which are unanswered, and which must be taken to be true. But that is not the fraud upon which these creditors can or do attack the receivership. The sole question here is: Was the machinery of the law set in motion and perverted to serve an unlawful purpose,—that is, to hinder, delay, and defraud creditors?

That the existence of the receivership and its continuance unimpaired is and will be a great advantage to the general creditors cannot admit of question. Affidavits have been read on these motions which testify to their anxiety for it. The situation, then, is that the attaching creditors, while contending that preferences have been given and a fraudulent scheme has been set on foot to hinder, delay, and defraud creditors, are demanding on that

ground that they be allowed to make levies which will probably absorb all of the insolvent estate, while the general creditors in turn are resisting the charges of fraud, and claim that their debtors have properly appealed to a court of equity to assume the trust of distributing their property equally among their creditors, and, further, insist that they are beneficiaries of the trust, and that the court should not permit an appropriation of the fund by those who are seeking full indemnification in disregard of equitable rules, and at their expense. It is well to recognize the fact that, if these motions are granted, the principal sufferers will be the 600 or more general creditors, who are, of course, innocent of any of the frauds alleged. Still, if the moving parties have made out a case calling for the relief which they ask, they are entitled to have it, without regard to its relation to the abstract justice of the case. The court, however, should proceed with great deliberation, and act only upon a clear preponderance of satisfactory proof, and where the proofs are presented as they are here, by affidavit, with great circumspection. Proof presented in that form is usually unsatisfactory, especially in the case of an issue such as is here presented, which, as a general thing, can only be satisfactorily determined upon a trial where all hearsay is excluded, and the witnesses are subjected to cross-examination. After sifting and considering the proofs before me, while the facts may excite suspicion, I do not think they are sufficient in clearness and weight to support the finding that the fraud alleged has been committed. If there have been any fraudulent transfers of property by these debtors, such transfers can still be attacked, and redress obtained in other ways than by assailing this receivership.

It remains to consider the question raised as to the status of the receiver, the contention being that he has no title to the property, and is merely a custodian, without any equitable interest in or lien upon the fund which can prevail against an attachment or execution. Where such a receiver is appointed of a solvent concern, which is frequently the case where differences have arisen between the partners, the contention is well founded, but the rule is quite otherwise where the firm is insolvent. While it is still true that the temporary receiver in such cases is only the custodian of the property, he has an equitable lien upon or interest therein for the benefit of the creditors, the property being then regarded as a trust fund of which they are the beneficiaries. Holmes v. McDowell, 15 Hun, 585; White v. Frankel, 12 Misc. Rep. 271, 33 N. Y. Supp. 1.

In the case of Holmes v. McDowell, 76 N. Y. 596, the court of appeals, in affirming the order below, expressly adopted the opinion of Judge Westbrook as its own. There, as in this case, a temporary receiver had been appointed on consent of the partners in an action brought by a member of a firm to wind up the affairs of the co-partnership, which was insolvent. An application was made by certain judgment creditors, whose judgments were recovered after the appointment of the receiver, and who had also secured the appointment of a receiver for their benefit in proceedings

supplementary to execution, to compel the partnership receiver to pay their judgments. The motion was denied. The whole question here involved was elaborately discussed by Judge Westbrook. Among other things, he says (page 589):

"It is true that the cause in which the appointment of the receiver was made has not yet proceeded to judgment; but it is also true that the owners of the partnership properly have, by their voluntary act, placed it in the hands of this court for equal distribution, and that the court has assumed jurisdiction over it for that purpose. It has not yet made its final order of distribution, but, by the appointment of its receiver, it has assured all persons interested that it will make that order in due time, and, until it settles the terms thereof, it will hold it for that purpose. If one or more creditors can, under such circumstances, obtain priority by judgment and execution, then the supreme court is powerless to accomplish what it has undertaken to do; and if the parties to the action may discontinue it, vacate the order appointing the receiver, and resume control of the property, then a court is only a creature of the will of others, and not an independent power clothed with the authority to do what it has undertaken; and though, at the instance of owners, it has assumed a trusteeship for the benefit of all creditors, it must, nevertheless, suspend its functions at the beck and instance of those persons who first invoked them. Such a conclusion, it seems to us, must be unsound. *The court holds the property of the insolvent firm for equal distribution, and will not, and ought not, to surrender its trust, or do any act which will prevent it from doing full and complete justice to all parties interested.*" (The italics are mine.)

The case of Webster v. Lawrence, 47 Hun, 565, cited by the attaching creditors, is not an adverse authority, as will be seen from a careful examination of the report (White v. Frankel, 12 Misc. Rep. 271, 33 N. Y. Supp. 1), where this case is discussed.

But it is claimed that the complaint determines the nature and object of the action, and that it does not allege insolvency, but differences between the partners with respect to winding up its affairs. Giving to the complaint the liberal construction which the law requires, I think that the statements which it contains showing an inability to pay debts as they mature, coupled with the prayer for judgment which asks a dissolution of the co-partnership and the appointment of a receiver to settle its affairs, including the payment of all just debts of the firm, answer the objection, and that it is sufficient to support the receivership as against attaching creditors within the principles above referred to, especially as a condition of insolvency is also extrinsically shown to exist. When the complaint and the prayer for judgment are considered, it seems unreasonable to claim that these partners have not as effectually cast upon the court the duty of applying the property to the payment of their debts as if the allegations of insolvency and prayer for relief had been as full and explicit as the attaching creditors claim they should have been. Moreover, in such a case as this, the court has a right to consider proofs aliunde with respect to the condition of the co-partnership at the time the receiver was appointed; and, where insolvency is shown to exist, it will retain jurisdiction of the action for the purpose of administering the insolvent estate for the benefit of the creditors, who, from any point of view under such a complaint as is here presented, would have to be paid, as far as the assets of the firm would permit, before the receiver would have fully discharged his duty.

The case of In re Thompson, 10 App. Div. 40, 41 N. Y. Supp. 740,

was cited on the argument. It is rather an authority in support of the position here taken than against it. There the complaint alleged the solvency of the partnership. Mr. Justice Rumsey, in the course of his opinion, says:

"If the partnership were insolvent, there is no doubt that the court would not permit any creditor to levy upon the property for the purpose of securing a prior lien, but it would hold the assets to be divided equally among the creditors, because in such a case as that equality is equity."

That a condition of insolvency existed in the case at bar when the receiver was appointed, and still exists, I think apparent; and the property of this insolvent co-partnership, when it passed to the receiver, consequently became impressed with a trust for its distribution among all the creditors pro rata, and it cannot now be otherwise appropriated.

The point made that the action is under the control of the partners, who may at any time discontinue it, is sufficiently answered in Holmes v. McDowell, supra; and, at any rate, if there should be a reasonable apprehension that any such thing might be attempted, it could be guarded against, as was suggested in White v. Frankel, supra, by an application on the part of a creditor to be made a party to the action, which doubtless, in such a case, the court would grant. No such question, however, now arises here, for, since these motions were initiated, an interlocutory judgment has been entered in this action, which, among other things, appoints the temporary receiver a permanent receiver, and suitably provides for the payment pro rata of the creditors of the co-partnership. The trust assumed by the court, as it is characterized in Holmes v. McDowell, when the temporary receiver was appointed, has become a finality, and the creditors, who are the beneficiaries, have also become quasi parties to the action on the footing of the judgment. It follows from what has been said that the motions should be denied.

Motions denied, with $10 costs.