G. N. PRICE *v.* R. K. PRICE *et al.*

(No. 8978)

Submitted January 16, 1940.   Decided February 27, 1940.

*Steptoe & Johnson,* for appellants.
*Charles M. Love,* for appellee.

HATCHER, JUDGE:

R. K. Price was treasurer of the City of Dunbar, with G. N. Price, W. S. Thurston and L. E. Parsons, sureties on his official bond. R. K. made collections on certain paving certificates which he failed to pay to the parties entitled thereto. Their claims exceeded the bond. One of such claimants, G. T. Fogle & Company (hereinafter called Fogle), sued R. K. Price, Thurston, and Parsons, in Kanawha County, on the bond, and November 19, 1933, recovered a judgment, which was docketed and an execution thereon issued the same day. (The execution was returned no property found.) November 22, 1933, Fogle instituted an action against G. N. Price, in Roane County, on the bond; and November 24, and December 5, 1933, respectively, two other claimants brought actions in Kanawha County against all the parties responsible on the bond. In March, 1934, and before the three later actions came on for final hearing, G. N. Price brought a suit in chancery asking that further prosecution of those actions, as well as other threatened actions on the bond be enjoined. No mention was made in the bill or the other pleadings in the suit, of the Fogle judgment recovered and docketed on November 19, 1933. The circuit court granted an injunction in the following terms: "It is further adjudged, * * * that all persons, firms or corporations having claims or rights of action upon the bond aforesaid, in which the plaintiff, G. N. Price, is surety, be enjoined and restrained from instituting or prosecuting any action at law upon such claim or demand, and as well from instituting or prosecuting any suit in equity thereon, except it be to join in and be made party to this suit."

Upon appeal, we affirmed the circuit court, holding, *inter alia*: "Unless inhibited by statute, equity treats as equal all non-lien claimants of a common fund. Equality is equity." *Price* v. *Price et al.*, 118 W. Va. 48, 188 S. E. 770, 771.

Thurston died in March, 1934, possessed of personal property and real estate insufficient to satisfy the judgment of Fogle, much less other claims against him. In a

suit by his administrator to settle the estate, Fogle as a defendant, proved its judgment, and payments thereon were directed. Whereupon, commencing in September, 1937, several non-lien claimants against the Thurston estate, under the Price bond, assailed for the first time Fogle's judgment against Thurston, and sought to participate with Fogle in what was realized upon it. They were denied by the circuit court.

Counsel for appellants contend that the steps taken by Fogle in furtherance of its judgment violated the injunction. We are of opinion that this contention is not well taken. The injunction inhibited only the prosecution of an action at law or a cause in equity *on a claim or demand upon the bond,* except in the instant suit. Fogle's cause of action upon the bond had been merged in the judgment, prior to the injunction. When so merged the original cause of action ceased to exist. *Randerson* v. *McKay,* 77 Okla. 238, 188 Pac. 323, 42 A. L. R. 464; *Noell* v. *Rd. Co.,* 335 Mo. 687, 74 S. W. (2d) 7, 94 A. L. R. 684; *Mutual Benefit Life Ins. Co.* v. *Bachtenkircher,* 209 Ind. 106, 198 N. E. 81, 104 A. L. R. 1135. Hence, what Fogle did after the injunction, was on the judgment, not the bond, and did not violate the injunction.

Counsel invoke again the maxim *equality is equity.* But "equity is not the chancellor's sense of moral right, or his sense of what is just and equal. It is a complex system of established law. * * * The maxim that *equality is equity* can only be applied according to established rules." *Savings Inst.* v. *Makin,* 23 Me. 360, 366. It must be read in connection with the maxim *equity aids the vigilant. Snower* v. *Hope,* 2 Fed. Supp. 931. And whenever the rights of parties are clearly defined and established by law "*equity follows the law* * * * despite the rule that *equality is equity.*" *Clinchfield Fuel Co.* v. *Titus,* 226 Fed. 574, 581. Accord: *Mathews* v. *Ins. Co.,* 75 Ala. 85; *Magniac* v. *Thomson,* 15 Howard (U. S.) 281, 299, 14 L. Ed. 696.

Counsel place much dependence on *National Surety Co.* v. *Graves,* 211 Ala. 533, 101 So. 190; *Illinois Surety Co.* v. *Mattone,* 138 App. Div. 173, 122 N. Y. Supp. 928, and *Guf-*

ƒanti v. *Surety Co.,* 133 App. Div. 610, 118 N. Y. Supp. 207. The Alabama case dealt only with threatened and pending law suits, not yet reduced to judgment. So it is not applicable here. The *Mattone* case held that upon default of an agency to account for moneys received for transmission to foreign countries, the creditors of the agency could sue on its bond *only in equity* and should share ratably in the sum recovered. That holding was based on *Musco* v. *Surety Co.,* 132 App. Div. 300, 117 N. Y. S. 21, and the *Guffanti* case, both of which related to a statute requiring one engaged in the business of receiving deposits for transmission to foreign countries to execute a bond conditioned upon faithful performance of the undertaking. The *Musco* case merely upheld the constitutionality of the statute. The *Guffanti* case construed the statute as intending the bond to provide a fund for the benefit of all defrauded depositors and as confining every such depositor to a suit in equity on behalf of himself and the others. Since our statute and the procedure under it are different from the New York statute, we consider these New York decisions inapplicable. Except as controlled by statute, the New York court, like every other authority, has uniformly held "that the vigilant creditor will not be deprived by a court of equity of any advantage or right which he honestly gained by pursuing the remedies which the law places at his disposal *before the subject-matter affected has come under control of the court." Myers* v. *Myers,* 18 Misc. 663, 43 N. Y. Supp. 737. Accord: *McDermutt* v. *Strong,* 4 Johnson, N. Y. Chy. Repts. 687, 691; *Purdy* v. *Doyle,* 1 Paige, N. Y. Chy. Repts. 558; *Meech* v. *Allen,* 17 N. Y. 300, 72 Am. Dec. 465; *State Bank* v. *Marsh,* 1 N. J. Eq. 288; *Ross* v. *Titsworth,* 37 N. J. Eq. 333, 337; *Newell* v. *Morgan,* 2 Harr. (Del.) 225; *In re Lord & Polk Ch. Co.,* 7 Del. Ch. 248, 44 Atl. 775; *Mikels* v. *Stone Co.,* 34 Ohio App. 442, 171 N. E. 251; *Roseboom* v. *Whittaker,* 132 Ill. 81, 23 N. E. 339; *Atwater* v. *Bank,* 152 Ill. 605, 38 N. E. 1017; *Wilson* v. *Randleman,* 116 N. C. 647, 21 S. E. 431, 432; *Friedman Savings & Trust Co.* v. *Earle,* 110 U. S. 710, 716 et seq., 4 S. Ct. 226, 28 L. Ed. 301; Smith Eq. Rem. of Creditors, sec. 25 par. 9; Lawrence Eq. Juris., sec. 62.

The charter of the City of Dunbar prescribes that the bond of a municipal officer should be subject to the same enforcement proceedings as the bond of a collector of county levies. Regarding such a bond, Code, 6-2-17, provides that a suit may be prosecuted for the benefit of *any person* injured by a breach of the condition of the bond. The words of the statute are so plain that no construction would seem necessary. However, in 1866 the Virginia Court made this obvious comment upon the predecessor of our statute: "The statute expressly gives the right to bring separate actions for separate causes of action; and it seems eminently proper that such should be the case. The breaches are wholly distinct causes of action, in favor, generally, of wholly distinct persons and there is no reason or propriety of confounding them in one action." *Sangster* v. *Commonwealth,* 17 Gratt. 124, 136, 58 Va. 124, 136. There was no privity between the other creditors of Price and Fogle. Each claim was founded upon a separate breach of the bond. Consequently, we are of opinion that Fogle had the right, under the statute, to bring a separate action.

But it is further contended that conceding a claimant may sue at law and recover a valid judgment on this bond, nevertheless, equity will regard him as having done so as a trustee for himself and all other claimants against the bond, on the theory that the bond was intended to provide a fund for the benefit of all. The lien of a judgment is purely a statutory creation circumscribed by statutory conditions for the preservation or the destruction of its integrity. *Lamon* v. *Gold,* 72 W. Va. 618, 621, 79 S. E. 728, 51 L. R. A. (N. S.) 883. If the judgment is not assailed within the period fixed by statute (and Fogle's judgment was not so assailed), the lien becomes an "accrued right" of the judgment creditor, "not intended" by the Legislature "to be impaired or destroyed." *Caldwell's Exr.* v. *Prindle's Admr.,* 19 W. Va. 604, 663. In 1736, Lord Chancellor Talbot held "where a particular remedy is given by law, and that remedy bounded and circumscribed by particular rules, it would be very improper for this Court

(chancery) to take it up where the law leaves it, and extend it farther than the law allows." *Heard* v. *Stanford,* Cases T. Talbot 173. That impropriety is still recognized. Story Eq. Juris. (14 Ed.) sec. 61; Pomeroy Eq. Juris. (4 Ed.) sec. 425 *Janney* v. *Buell,* 55 Ala. 408, 411. The Supreme Court of the United States is more emphatic, propounding as a "legal truism admitting of no dispute * * * that wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation * * * ." *Magniac* v. *Thompson, supra.* That legal truism is recognized in our own case of *Lewis* v. *Fisher,* 114 W. Va. 151, 155, 171 S. E. 106, 107, wherein Judge Kenna, speaking for the Court, said of a judgment lien: "Being a purely statutory lien, the jurisdiction of a court of equity, whether it be inherent or whether it be conferred by statute, is, in any event, based upon the statute, and the court of equity taking jurisdiction * * * may not extend it to cases not provided for in the statute itself." In addition to the authorities there cited the following are also accordant: *Upham* v. *Wyman,* 7 Allen 499, 502, 503, 89 Mass. 499, 502-3; *Disbrell* v. *Carlisle,* 48 Miss. 691, 705; *Scott* v. *Brewing Co.,* 256 Pa. 158, 100 Atl. 591, 592; 19 Am. Juris. Eq. Sec. 454. Therefore, it would seem that after a judgment has become unassailable under the statute, a court of chancery has no power whatever, under an equitable trust doctrine, to impair the personal advantage conferred by the statute on a diligent judgment creditor.

The decree is affirmed.

*Affirmed.*

Fox, Judge, dissenting:

I respectfully dissent from the opinion of the majority of the Court in this case because I believe it violates a sound principle of public policy of vital importance to every one who deals with public officials required to execute a bond.

Under the majority opinion, and from this time on, the security of official bonds in this state, heretofore, as I be-

lieve, assumed to be for the benefit of all those entitled to rely thereon upon a basis of entire equality, will, in cases where liability exceeds the penalty of the bond, be limited to those who, by reason of superior information, alertness or vigilance, are able, by an action at law, to secure a preference over those less fortunate. Thus the security designed to be afforded to all, either in full or ratably, will be appropriated to the sole benefit of a particular class. The maxim that "equality follows the law" is made the means by which another cherished maxim, "equality is equity", is destroyed in cases such as that before us. The rule announced will, in my opinion, strike a heavy blow to the confidence which the public has the right to repose in the security provided by law in respect to acts of public officials, and its effect on such confidence cannot be easily exaggerated. We are dealing with a question which affects the official bonds of thousands of public officials, and its effect on a still greater number of individuals who day by day transact business with these officials, and rely upon the security supposed to be afforded by their bonds. While comparatively few cases will present the question here involved, there is no way to determine in advance the particular bonds which will raise the question. The public policy here involved, far transcends the individual interests of the litigants now before the court.

The majority opinion very ably presents the viewpoint that equity will not divest rights acquired at law, and with the conclusion therein reached I am in full accord, so far as it applies to ordinary private transactions wherein no public interest is involved, and no public policy is at stake. I do not think the case before us is one to which the arguments of the majority opinion should be applied. In my judgment, the bond of a public official is, on grounds of public policy, a fund or reservoir of public security to which preferential claims cannot attach, and with respect to which the force and validity of judgments, as ordinarily applied, are unimportant.

It seems to me that the prime purpose of any bond, executed to secure the performance of a public duty,

is to guarantee such performance to all who may have the right to rely thereon; that the rights of those who are entitled to rely on such security are equal, and are based upon the bond itself and attach thereto immediately upon its execution; and that they cannot be appropriated, in whole or in part, by the separate and independent action of any one or more persons, where the result would be to wholly deprive others equally entitled thereto of any part of the protection intended for all. If the bond is, as I believe, a special fund for the benefit of all, it must be preserved as such, and the mere fact that a person may obtain a judgment at law, under the bond, while valid as fixing the right to participate in the fund and settling the amount of his claim, as well as establishing a statutory lien on the property of those against whom the judgment is recovered, does not entitle him to use such judgment to exhaust the fund provided by the bond to the prejudice of others whose rights thereunder are equal to his own. The fund created by the bond cannot, in my opinion, be made subject to the preference which a judgment and execution ordinarily give.

I concede, of course, that actions may be maintained by individuals, in the name of the state, to collect individual claims to the amount of the penalty of a bond payable to the state. Code, 6-2-17. But I do not believe that this rule should be made something akin to a fetich, in the adoration of which we should blind ourselves to equitable rules which I consider of paramount importance. Equity will not permit the processes of a court to be used to work injustice unless restrained by some rigid rule which prevents action on its part. I do not believe a court of equity is barred from granting relief in this cause. I agree that in the absence of a showing that the total claims under the bond exceed its penalty, full force and effect will be given to a judgment thus obtained. It is only where it appears that the collection of such judgment will destroy the right of equality in the bond that a court of equity will interfere. When this happens,

then the principle of equality will and should be enforced regardless of the claimed priority of a judgment.

I think it is conceded that as to official bonds the principle of equality of claimants thereunder should prevail, and, in the absence of a judgment at law or some other character of lien, does prevail. Much could be said in favor of this principle. It is applied in all cases where funds come into the possession of a court, and I think it reasonable to contend that a bond executed under statutory requirements, for the benefit of the public at large, is, and should be, as much within the control of the law as is a fund upon which a court has laid its hands. It is not necessary to argue this point further. It was so well stated by the author of the majority opinion on this appeal, when this cause was heretofore before the court, 118 W. Va. 48, 188 S. E. 770, that a quotation from that opinion will sum up the arguments in favor of my position much better than I can hope to do. Therefore, I take the liberty of quoting the same:

"In a scramble of creditors for preference in a common fund, equity imputes no particular merit to diligence, alone. *In re. Lord & Polk Chemical Co.*, 7 Del. Ch. 248, 44 A. 775, 778; *Ill. Surety Co. v. Mattone*, 122 N. Y. S. 928, 929, 138 App. Div. 173; *Am. Surety Co. v. Lawrenceville*, 96 F. 25. That *equality is equity*, is an established principle of equity. In conformity wherewith, unless inhibited by statute, courts of chancery treat as equal all non-lien claimants of a common fund. *Lippitt v. Thames*, 88 Conn. 185, 90 A. 369. Where all the claimants of a fund have a common interest therein, an adequate remedy is one which affords uniform recoveries to all. If the claims do not exceed the fund, then priority has no significance, and each claimant has a plain and adequate remedy at law. If the claims do exceed the fund, each claimant is entitled equitably only to his *pro-rata* share therein, and the law provides no means for such an adjustment; equity alone is prepared to make it. *Dimmick v. Register*, 92 Ala. 458, 9 So. 79, 80. It is even said that no rule

of equity appeals more to the conscience of a chancellor than that requiring an insufficient fund to be apportioned ratably among all its claimants. *Livingstain* v. *Columbian Banking & Trust Co.,* 77 S. C. 305, 57 S. E. 182, 22 L. R. A. (N. S.) 442, 122 Am. St. R. 568, 572. So it may be taken as settled that equity will assume jurisdiction when necessary to prevent unequal distribution of a limited fund. 'The Primary equity of the bill is the adjustment of claims and the equitable apportionment of a fund provided by law which is insufficient to pay claimants in full. * * * The basic principle of the bill is sound. Equality is equity.' *Nat. Surety Co.* v. *Graves,* 211 Ala. 533, 101 So. 190. Accord: *Guffanti* v. *Surety Co.,* 196 N. Y. 452, 90 N. E. 174; Pomeroy's Eq. Juris. (4th Ed.), sec. 407. Under this view, a discussion of the question of multiplicity of actions is unnecessary."

It may be fairly contended that the reference to "non-lien claimants of a common fund" leaves the door open to the position now taken by a majority of the court. I think the force and reasoning in favor of the principle of equality expressed by the learned judge and quoted above, supported by the many authorities he cites, outweighs the contention that a deep-rooted principle of equity may be overcome by the mere recovery of a judgment, which, I agree, created a lien against the property of the defendants therein, but which, I contend, at no time touched the fund created by the bond. In my research on this question, I find three cases which support the contention that a preference may be obtained in a matter wherein a bond is involved. One is the case of *M'Kean* v. *Shannon* (Pa.), 1 Binney 370, decided in 1808, which involved an auctioneer's bond; another is *Christman* v. *Commonwealth* (Pa.), 17 Sergeant & Rawles 381, decided in 1828, and another, *State* v. *Ford* (Ind.), 5 Blackford 392, decided in 1840. These cases are not in accord on the question of whether or not the suit or the judgment determines the priority to be allowed. As against these cases, may be set up what I think is the

better rule as announced in *Guffanti v. Surety Co.,* 196 N. Y. 452, 90 N. E. 174, 134 Am. St. Rep. 848; *National Surety Co. v. Graves,* 211 Ala. 533, 101 So. 190; *Illinois Surety Co. v. Mattone,* 138 App. Div. 173, 122 N. Y. S. 928. In the latter case, one Pesce was required to give a bond to secure the transmitting and paying over of moneys received by him for transmission to foreign countries, and to keep money received by him upon deposit. Pesce defaulted, after which a number of actions were brought on the bond, some of which, it is stated, had come to judgment and which actions were mainly instituted in courts having no equity jurisdiction, and yet when an injunction was sought to secure equitable distribution of the amount of the bond, it was granted and the court expressly held that:

> "The plaintiff, however, is liable in the aggregate only to the amount of its undertaking, and that amount constituted a fund for the payment of the creditors pro rata, and is to be distributed among them equitably according to their respective claims. Mere diligence in prosecuting a claim against such a fund will not entitle the prosecuting claimant to a priority of payment."

It is stated in the majority opinion that it was held in the *Mattone* case that the creditor of the agency could sue on the bond in equity only. That may be true, but the principles of equality are clearly stated, and judgments were ignored when they interfered with that principle. It is true that under our statute a creditor may sue at law; but even so, the question remains as to whether or not, by obtaining a judgment in such a suit, he secures a preference over those whose rights in the fund he relies on are equal to his own. As so clearly stated in the opinion upon the former appeal herein, if the claims do not exceed the fund, the priority has no significance, but where they do exceed the penalty of the bond, the doctrine of priority destroys the equality principle with which the bond was intended to be surrounded from the beginning. Without in any way des-

troying the force or effect of a judgment as against the defendants therein, this Court can uphold the principle of equality of rights, as respects the bond of a public official, by holding that anyone who recovers a judgment under our statute on such bond, under the circumstances developed herein, holds the same for the benefit of everyone similarly situated with respect to such bond, as the matter stood immediately before entry of such judgment. The fact that the claims under the bond exceed its penalty was developed in this cause prior to the distribution of the fund which grew out of the bond, and nothing stands in the way of an equitable distribution thereof. I am not prepared to say that the rule I advocate would be extended to a case where claimants under the bond stood by, without action, and allowed other claimants to prosecute suits to the extent of actual recovery. In such a case I apprehend that other principles of equity could be invoked which would prevent the application of the equality rule. That, however, is not the case before us, and I am impelled to the conclusion that nothing has happened in this case to interfere with the sound and equitable principle that the fund arising from the bond of a public official should be distributed among those entitled to its protection on the basis of exact equality.

I would reverse the decree of the circuit court and remand the cause for such proceedings as may be necessary to a ratable distribution of the fund arising from the official bond here involved.